1  WESTERMAN LAW CORP.
   Jeff S. Westerman (SBN 94559)
2  jwesterman@jswlegal.com
   Kenneth A. Remson (SBN 153850)
3  kremson@jswlegal.com
   1875 Century Park East, Suite 2200
4  Los Angeles, CA 90067
   Tel: (310) 698-7880
5  Fax: (310) 698-7452

6  CONSUMER LAW GROUP OF CALIFORNIA
   Alan M. Mansfield (SBN 125998)
7  alan@clgca.com
   16870 W. Bernardo Dr., Suite 400
8  San Diego, CA 92127
   Tel: (619) 308-5034
9  Fax: (855) 274-1888

10  *Attorneys for Plaintiffs*

11

12            **IN THE UNITED STATES DISTRICT COURT**

13     **FOR THE NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION**

14  **CARL JONES, individually and**       **CASE NO.:**
    **on behalf of all others similarly**
15  **situated,**                          **CLASS ACTION**

16              **Plaintiff,**             **COMPLAINT FOR:**

17          **v.**

18  **INTEL CORP.; and DOES 1-**           1) **VIOLATION OF CALIFORNIA'S**
    **10,**                                   **CONSUMERS LEGAL REMEDIES**
19                                            **ACT, CAL. CIVIL CODE § 1750, *ET***
                **Defendants.**              ***SEQ.* (INJUNCTIVE RELIEF ONLY);**
20
                                           2) **VIOLATION OF CAL. BUS. & PROF.**
21                                            **CODE § 17200, *ET SEQ.* ("UNFAIR"**
                                              **BUSINESS PRACTICES);**
22
                                           3) **VIOLATION OF CAL. BUS. & PROF.**
23                                            **CODE § 17200, *ET SEQ.***
                                              **("DECEPTIVE" BUSINESS**
24                                            **PRACTICES);**

25                                         4) **VIOLATION OF CAL. BUS & PROF.**
                                              **CODE § 17200, *ET SEQ.***
26                                            **("UNLAWFUL" BUSINESS**
                                              **PRACTICES);**
27

28
                  _____
                  COMPLAINT AND DEMAND FOR JURY TRIAL

**5) BREACH OF IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSE;**

**6) VIOLATION OF SONG-BEVERLY WARRANTY ACT, CAL. CIV. CODE § 1790, *et seq.*;**

**7) VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, *et seq.*;**

**8) COMMON COUNTS – ASSUMPSIT, RESTITUTION, UNJUST ENRICHMENT AND QUASI-CONTRACT;**

**9) STRICT LIABILITY;**

**10) NEGLIGENCE**

**DEMAND FOR JURY TRIAL**

Plaintiff, Carl Jones ("Plaintiff"), on behalf of himself and all others similarly situated, by and through undersigned counsel, hereby file this Class Action Complaint against Defendant Intel Corp. and DOES 1-10 (collectively "Defendants" or "Intel"), and allege as follows on information and belief (except for information as to the individual Plaintiff specifically identified as being based on personal knowledge), which allegations are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery:

**JURISDICTION AND VENUE**

1.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from

Defendants. This Court also has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

2.     This Court has personal jurisdiction over Defendants because Defendants are based in California, have sufficient minimum contacts with California, either directly or through their subsidiaries, and/or have otherwise purposely availed themselves of the markets in California through the promotion, marketing, and sale of their products and services in California, for distribution both throughout and from California, and are otherwise based here, to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

3.     Venue is proper in this District under 28 U.S.C. § 1391 because Defendants maintain substantial operations in this District, Plaintiff and many Class members either reside or engaged in transactions in this District, Defendants engaged in business and made representations in this District, and a substantial part of the events or omissions giving rise to the claims at issue occurred in this District.

## **PARTIES**

4.     On personal knowledge, Plaintiff Carl Jones resides in Santa Clara County, California. As set forth in further detail below, Plaintiff Jones purchased an MSI GT80 series laptop computer in this State online through Amazon.com for the sum certain of $3,047.91 on or about January 22, 2016.  Specifically, he purchased a GT80S Titan SLI-012, containing an Intel x86-64x model CPU, computer serial number GT80S 6QD-012USK1511000084.

5.     On personal knowledge:

(a)     Plaintiff purchased these products for personal use and not for purposes of resale or distribution.

(b)     Upon viewing website advertisements, product packaging

and/or publicly available information for this laptop Plaintiff purchased the laptops in question.

(c)     Plaintiff would not have purchased this laptop at the price he did if this defect had been fully disclosed as existing, or if the degradation in performance resulting from the apparent fixes of this defect had been timely disclosed by Defendants, or we would have not purchased a computer containing a latent defect. Having purchased a computer that contains a CPU that suffers from a material defect as alleged below, Plaintiff therefore suffered a loss of money or property and suffered damage as a result of Defendants' illegal business acts and practices.

6.     Defendant Intel Corp. is a corporation organized and existing under the laws of the State of California and whose principal place of business and headquarters is in the State of California and this District. Intel Corp. is engaged in the business of designing, manufacturing, selling and/or distributing CPUs, including the series of CPUs at issue here. Defendants design, manufacture, develop and ship their products to purchasers, resellers and distributors in and from California, maintain a direct sales force and customer service department in California, sell their products through retail outlets in California, and create the specifications for their products in and/or disseminates them from California.

7.     The true and precise names, roles and capacities of Defendants named as Does 1 through 10, inclusive, are currently unknown to Plaintiff and, therefore, are designated and named as Defendants under fictitious names. Plaintiff will identify their true identities and their involvement in the wrongdoing at issue if and when they become known. Defendants' conduct described herein was undertaken or authorized by officers or managing agents who were responsible for supervision and operations decisions relating to the design, manufacture, distribution, marketing, advertising and/or sale by Defendants of the

Intel CPUs here at issue. At all times relevant hereto, Defendants were engaged in the business of designing, manufacturing, distributing and/or selling, either directly or indirectly through third parties and authorized resellers or agents, these series of CPUs throughout and from California. The described conduct of said managing agents and individuals was therefore undertaken on behalf of Defendants in substantial part in and from California. Defendants further had advance knowledge of the actions and conduct of said individuals whose actions and conduct were ratified, authorized, and/or approved by Defendants and/or their managing agents.

8.    Each of the above-named Defendants acted in concert and both aided and abetted and conspired with each other to either misrepresent or not disclose the material facts stated herein, with such conduct authorized and/or acted on by and through their officers, employees, agents, servants, and/or representatives. Defendants have engaged in a calculated and coordinated campaign of silence despite their knowledge of the true facts as set forth herein regarding the failure of such products to be sold without containing a material, substantial defect that, if and when resolved will materially impact the performance of Plaintiff and Class members' computers.

9.    Each reference made in this Complaint to any corporate Defendant in this Complaint includes its predecessors, successors, parents, subsidiaries, affiliates, and divisions of the corporation for the corresponding time period in any way involved in the design, manufacture, promotion, distribution and/or sale of these laptops.

## SUMMARY OF FACTS

10.    This is a class action lawsuit brought on behalf of consumers who purchased computers containing an Intel x89-64x series of CPUs. Defendant Intel's x86-64x CPUs suffer from a security defect, which causes the CPUs to be

exposed to troubling security vulnerabilities by allowing potential access to extremely secure kernel data (the "Defect"). The only way to "patch" this vulnerability requires extensive changes to the root levels of the Operating System, which will dramatically reduce performance of the CPU and thus the computers of Plaintiff and Class members. The Defect renders the Intel x86-64x CPUs unfit for their intended use and purpose. The Defect exists in all Intel x86-64x CPUs manufactured since at least 2008. The x86-64x CPU is, and was, utilized in the majority of all desktop, laptop computers, and servers in the United States.

11.     To date, Defendants have been unable or unwilling to repair the Defect or offer Plaintiff and class members a non-defective Intel CPU or reimbursement for the cost of such CPU and the consequential damages arising from the purchase and use of such CPUs. Indeed, there does not appear to be a true "fix" for the Defect. The security "patch," while expected to cure the security vulnerabilities, will dramatically degrade the CPU's performance in Plaintiff's and Class members' computers. Therefore, the only "fix" would be to exchange the defective x86-64x processor with a device containing a processor not subject to this security vulnerability. In essence, Intel x86-64x CPU owners are left with the unappealing choice of either purchasing a new processor or computer containing a CPU that does not contain the Defect, or continuing to use a computer with massive security vulnerabilities or one with significant performance degradation.

12.     The CPUs Defendants manufactured and were installed in computers sold to Plaintiff and Class members were not merchantable and were not fit for the ordinary and particular purposes for which such goods are used in that the CPUs suffer from a critical security defect, requiring an OS-level software patch that will degrade the performance of the computer.

13.    While just disclosed, this is not a new issue. For at least 10 years, Defendant has marketed, distributed, and warranted these defective Intel CPUs in California and throughout the United States.

14.    On or about November 21, 2017, news stories revealed that a large number of Intel processors contain a serious design flaw that creates significant security vulnerabilities for any device that uses Intel processors.  The security flaw is in Intel's x86-64 hardware which was first introduced in 2004 and is still in use in the majority of today's modern-day processors.

15.    The design defect is believed to exist in almost every Intel processor made since at least 2004 regardless of the operating system.  Intel's x86-64x processors are the most widely-used chips in virtually all desktop and laptop computers. The Intel processors are also used in most of the large, cloud based servers such as those from Google, Microsoft and Amazon.

16.    On or about January 2, 2018, it was revealed that the "patch" to this security vulnerability would lead to substantial CPU performance degradation. The "patch" would require root level changes to the Operating System resulting in a substantial decrease in CPU performance as much as 30-50% by some estimates.

17.    Intel's Intel CPUs have a Defect that is inherent within the CPU itself and/or the result of software or hardware design or manufacturing flaws.  Fixing the Defect using an OS-level software patch causes the CPUs to slow down. As The Register reported on January 2, 2018:

> A fundamental design flaw in Intel's processor chips has forced a significant redesign of the Linux and Windows kernels to defang the chip-level security bug.
>
> Programmers are scrambling to overhaul the open-source Linux kernel's virtual memory system. Meanwhile, Microsoft is expected to publicly introduce the necessary

changes to its Windows operating system in an upcoming Patch Tuesday: these changes were seeded to beta testers running fast-ring Windows Insider builds in November and December.

Crucially, these updates to both Linux and Windows will incur a performance hit on Intel products. The effects are still being benchmarked, however we're looking at a ballpark figure of five to 30 per cent slow down, depending on the task and the processor model. More recent Intel chips have features – such as PCID – to reduce the performance hit. […]

Similar operating systems, such as Apple's 64-bit macOS, will also need to be updated – the flaw is in the Intel x86-64 hardware, and it appears a microcode update can't address it. It has to be fixed in software at the OS level, or go buy a new processor without the design blunder.

Details of the vulnerability within Intel's silicon are under wraps: an embargo on the specifics is due to lift early this month, perhaps in time for Microsoft's Patch Tuesday next week. Indeed, patches for the Linux kernel are available for all to see but comments in the source code have been redacted to obfuscate the issue."

See https://www.theregister.co.uk/2018/01/02/intel_cpu_design_flaw/ (last visited January 2, 2018).

18.    Subsequent reporting by *The Register* found that Apple has already provided a software patch for the defect: "Finally, macOS has been patched to counter the chip design blunder since version 10.13.2, according to operating system kernel expert Alex Ionescu." (Id.)

19.    In a follow up article by the *Register* on January 4, 2018, it explained the significance of this Defect and why this Defect (and the failure to disclose it) is material:

On a shared system, such as a public cloud server, it is possible, depending on the configuration, for software in a guest virtual machine to drill down into the host machine's physical memory and steal data from other customers' virtual machines. See below for details on Xen and VMware hypervisor updates.

Intel is not the only one affected. Arm and AMD processors are as well – to varying degrees. AMD insisted there is a "near-zero" risk its chips can be attacked in some scenarios, but its CPUs are vulnerable in others. The chip designer has put up a basic page that attempts to play down the impact of the bugs on its hardware.

ARM has produced a list of its affected cores, which are typically found in smartphones, tablets and similar handheld gadgets. That list also links to workaround patches for Linux-based systems. Nothing useful from Intel so far.

*This is, essentially, a mega-gaffe by the semiconductor industry. As they souped up their CPUs to race them against each other, they left behind one thing in the dust. Security.*

One way rival processors differentiate themselves, and perform faster than their competitors, is to rely on speculative execution. In order to keep their internal pipelines primed with computer code to obey, they do their best to guess which instructions will be executed next, fetch those from memory, and carry them out. If the CPU guesses wrong, it has to undo the speculatively executed code, and run the actual stuff required.

Unfortunately, the chips in our desktop PCs, laptops, phones, fondleslabs, and backend servers do not completely walk back every step taken when they realize they've gone down the wrong path of code. That means

9

COMPLAINT AND DEMAND FOR JURY TRIAL

remnants of data they shouldn't have been allowed to fetch remain in their temporary caches, and can be accessed later.

https://www.theregister.co.uk/2018/01/04/intel_amd_arm_cpu_vulnerability/

20.     The Defect's presence is material because fixing the Defect reduces the performance of the CPUs thereby causing the CPUs to slow down from the performance specifications that Defendant promised and that consumers expected when buying a computer with an Intel CPU.  The Defect is also material because of the security vulnerabilities Intel based CPUs are exposed to.

21.     As the January 3, 2018 *Register* article further explains:

It is understood the bug is present in modern Intel processors produced in the past decade. It allows normal user programs – from database applications to JavaScript in web browsers – to discern to some extent the layout or contents of protected kernel memory areas.

The fix is to separate the kernel's memory completely from user processes using what's called Kernel Page Table Isolation, or KPTI. […]

Whenever a running program needs to do anything useful – such as write to a file or open a network connection – it has to temporarily hand control of the processor to the kernel to carry out the job. To make the transition from user mode to kernel mode and back to user mode as fast and efficient as possible, the kernel is present in all processes' virtual memory address spaces, although it is invisible to these programs. When the kernel is needed, the program makes a system call, the processor switches to kernel mode and enters the kernel. When it is done, the CPU is told to switch back to user mode, and reenter the process. While in user mode, the kernel's code and data remains out of sight but present in the process's page tables. […]

These KPTI patches move the kernel into a completely separate address space, so it's not just invisible to a running process, it's not even there at all. Really, this shouldn't be needed, but clearly there is a flaw in Intel's silicon that allows kernel access protections to be bypassed in some way.

The downside to this separation is that it is relatively expensive, time wise, to keep switching between two separate address spaces for every system call and for every interrupt from the hardware. These context switches do not happen instantly, and they force the processor to dump cached data and reload information from memory. This increases the kernel's overhead, and slows down the computer.

**Your Intel-powered machine will run slower as a result.**

(*Id.* (emphases added).)

22.    In an effort to run as quickly as possible, Intel processors run something called "speculative execution." In essence, the processor attempts to guess what operation is going to be run next so that code can be standing by, ready to execute. When the processor selects what it believes is the next operation, it will fetch the code(s) needed to carry out that operation and have the code(s) on standby. However, Intel's "speculative execute" code may "fetch" secure codes without first performing a security check which would block such a request. So an innocuous program such as Javascript might be exploited to gain access to extremely secure kernel data. Or as the *The Register* writes, "[t]hat would allow ring-3-level user code to read ring-0-level kernel data. And that is not good."

23.    The Defect is material because neither Plaintiff, Class members, nor any reasonable consumer would have purchased the defective CPUs, either

separately or as part of a computer system, at the prices that they did had they known or had they been told by Intel or its retail agents about the Defect prior to purchase.

24.     The Defect is unprecedented in scope in that it exposes millions and millions of Intel-based computers to critical security vulnerabilities and hacking and the "patch" to cure these security vulnerabilities will result in substantial performance degradation.

25.     Intel is aware that its CPUs suffer from the Defect that exposes the CPUs to critical security vulnerabilities and that proposed OS-level software patches will slow the performance of these CPU chips.  On January 3, 2018, Intel issued a press release in response to the myriad news media reports concerning the Defect, stating:

> Intel and other technology companies have been made aware of new security research describing software analysis methods that, when used for malicious purposes, have the potential to improperly gather sensitive data from computing devices that are operating as designed. Intel believes these exploits do not have the potential to corrupt, modify or delete data.
>
> Recent reports that these exploits are caused by a "bug" or a "flaw" and are unique to Intel products are incorrect. Based on the analysis to date, many types of computing devices — with many different vendors' processors and operating systems — are susceptible to these exploits.
>
> Intel is committed to product and customer security and is working closely with many other technology companies, including AMD, ARM Holdings and several operating system vendors, to develop an industry-wide approach to resolve this issue promptly and constructively. Intel has begun providing software and firmware updates to mitigate these exploits. Contrary to

some reports, any performance impacts are workload-dependent, and, for the average computer user, should not be significant and will be mitigated over time.

Intel is committed to the industry best practice of responsible disclosure of potential security issues, which is why Intel and other vendors had planned to disclose this issue next week when more software and firmware updates will be available. However, Intel is making this statement today because of the current inaccurate media reports.

Check with your operating system vendor or system manufacturer and apply any available updates as soon as they are available. Following good security practices that protect against malware in general will also help protect against possible exploitation until updates can be applied.

Intel believes its products are the most secure in the world and that, with the support of its partners, the current solutions to this issue provide the best possible security for its customers."

https://newsroom.intel.com/news/intel-responds-to-security-research-findings/ (last viewed January 5, 2018)

26.   Defendants' press release is misleading because, among other reasons, while it acknowledges the existence of the Defect, it claims other vendors (competitors) products also suffer from this Defect, and downplays the performance impact which it claims "will be mitigated over time."

27.   Intel has failed to cure the Defect or offer to replace Plaintiffs' Intel CPUs with non-defective CPUs and offer full compensation required under federal and state law.

28.   Any fix would require extensive changes at the root levels of the OS software, which would assuredly impact the performance of Intel processor-based machines.   More importantly, any "fix" would not only directly impact the

COMPLAINT AND DEMAND FOR JURY TRIAL

performance of a particular user's Intel-based device, but have indirect performance impacts. Countless servers that run internet-connected services in the cloud will see a dramatic degradation in performance, which will have a downstream impact to all users of these servers. Thus, cloud-based services like Microsoft, Google, and Amazon will see performance degradation.

29. The Defect results in the ability of two branded bugs to infect computers with the CPUs, and apparently has been known by Intel for at least the last six months, if not earlier. As explained in the January 4, 2018 *Guardian* article referenced above:

> Here's a summary of the two branded bugs:
>
> **Meltdown**
>
> This is the big bug reported on Tuesday.
>
> It can be exploited by normal programs to read the contents of private kernel memory.
>
> It affects potentially all out-of-order execution Intel processors since 1995, except Itanium and pre-2013 Atoms. It definitely affects out-of-order x86-64 Intel CPUs since 2011. There are workaround patches to kill off this vulnerability available now for Windows, and for Linux. Apple's macOS has been patched since version 10.13.2. Installing and enabling the latest updates for your OS should bring in the fixes. You should go for it. If you're a Windows Insider user, you're likely already patched. Windows Server admins must enable the kernel-user space splitting feature once it is installed; it's not on by default.
>
> Amazon has updated its AWS Linux guest kernels to protect customers against Meltdown. Google recommends its cloud users apply necessary patches and reboot their virtual machines. Microsoft is deploying fixes to Azure. If you're using a public cloud provider, check them out for security updates.

The workarounds move the operating system kernel into a separate virtual memory space. On Linux, this is known as Kernel Page Table Isolation, or KPTI, and it can be enabled or disabled during boot up. You may experience a performance hit, depending on your processor model and the type of software you are running. If you are a casual desktop user or gamer, you shouldn't notice. If you are hitting storage, slamming the network, or just making a lot of rapid-fire kernel system calls, you will notice a slowdown. Your mileage may vary.

It also affects Arm Cortex-A75 cores, which aren't available yet. Qualcomm's upcoming Snapdragon 845 is an example part that uses the A75. There are Linux kernel KPTI patches available to mitigate this. The performance hit isn't known, but expected to be minimal.

Additionally, Cortex-A15, Cortex-A57 and Cortex-A72 cores suffer from a variant of Meltdown: protected system registers can be accessed, rather than kernel memory, by user processes. Arm has a detailed white paper and product table, here, describing all its vulnerable cores, the risks, and mitigations.

Meltdown does not affect any AMD processors.
Googlers confirmed an Intel Haswell Xeon CPU would allow a normal user program to read kernel memory.

It was discovered and reported by three independent teams: Jann Horn (Google Project Zero); Werner Haas, Thomas Prescher (Cyberus Technology); and Daniel Gruss, Moritz Lipp, Stefan Mangard, Michael Schwarz (Graz University of Technology).

**Spectre**

Spectre allows, among other things, user-mode applications to extract information from other processes running on the same system. Alternatively, it can be used by code to extract information from its own process. Imagine malicious JavaScript in a webpage churning

away using Spectre bugs to extract login cookies for other sites from the browser's memory.

It is a very messy vulnerability that is hard to patch, but is also tricky to exploit. It's hard to patch because just installing the aforementioned KPTI features is pointless on most platforms – you must recompile your software with countermeasures to avoid it being attacked by other programs, or wait for a chipset microcode upgrade. There are no solid Spectre fixes available yet for Intel and AMD parts.

In terms of Intel, Googlers have found that Haswell Xeon CPUs allow user processes to access arbitrary memory; the proof-of-concept worked just within one process, though. More importantly, the Haswell Xeon also allowed a user-mode program to read kernel memory within a 4GB range on a standard Linux install. This is where it gets really icky. It is possible for an administrative user within a guest virtual machine on KVM to read the host server's kernel memory in certain conditions.

***

*We're told Intel, AMD and Arm were warned of these security holes back in June last year.*

30. Defendants uniformly failed to disclose the true specifications of and latent defects in the CPUs at issue, despite likely having evidence to the contrary in their exclusive possession and control. Defendants' uniform omission of the material fact that these CPUs possessed the Defect was likely to be and/or is material and misleading to reasonable consumers.

31. Plaintiff and Class members were exposed to Defendants' omissions of material fact regarding this Defect and purchased at least one computer containing this series of CPU. Plaintiff and the Class members were thus sold products that do not perform or possess the capabilities, uses or benefits

reasonably expected, and contained a latent design or manufacturing defect that prevents computers containing these CPUs from performing as reasonably expected, or remain subject to a significant security flaw. They have thus been injured in fact or suffered damage as a result. They also did not receive the benefit of their bargain in terms of receiving the product they paid for possessing the characteristics of a not defective fully functioning CPU.

32. Despite Defendants' admissions, these CPUs are marketed, installed and sold in computers without either affirmatively disclosing these material limitations or having engaged in a corrective promotional campaign to correct their previous misstatements. Such conduct is on-going.

33. Plaintiffs and/or the Class members they seek to represent suffered damage, injury and/or a loss of money or property as a result of such conduct. Plaintiffs thus seek damages, injunctive and equitable relief, attorneys' fees and costs and all other relief as permitted by law on behalf of themselves and all others similarly situated, as applicable to the causes of action set forth herein.

## CLASS ACTION ALLEGATIONS

34. Plaintiffs bring this action on behalf of themselves and all others similarly situated as members of a proposed class ("Class"), defined as follows:

> All persons who, in California and such other states the Court determines to be appropriate, purchased one or more Intel CPUs from Intel and/or its authorized retailer sellers and experienced the Defect or are likely to experience the Defect during the useful life of the CPU. Excluded from the Class are Defendant, its officers and directors at all relevant times, members of immediate families and their legal representatives, heirs, successors, or assigns and any entity in which the Defendant had a controlling interest.

35.     This action is brought and may properly be maintained as a class action as this action satisfies the numerosity, commonality, typicality, adequacy, predominance, and/or superiority requirements for proceeding on a class-wide basis.

36.     The Class is so numerous that the individual joinder of all members is impracticable. While the exact number of Class members is currently unknown and can only be ascertained through appropriate discovery, Plaintiffs believe that the Class includes millions of individuals whose identities can be accessed through warranty and purchase records.

37.     Common legal and factual questions exist and predominate over any questions affecting only individual Class members. These common questions, which do not vary among Class members and which may be determined without reference to Class member's individual circumstances, include, but are not limited to:

a.      Whether and which CPUs contain the Defect;

b.      Whether Defendants had no adequate factual basis for making claims relating to the CPUs prior to making them and when Defendants became aware of the material facts at issue;

c.      Whether Defendants' failure to disclose that the CPUs contain the Defect was material and would be likely to mislead a reasonable consumer;

d.      Whether Defendants' entered into and breached agreements or warranties that are either express or implied by law or equity;

e.      Whether Defendants engaged in unfair, unlawful, and/or deceptive business practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*;

f.      Whether Defendants failed to disclose that the CPUs contain a material Defect in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*

and § 17500, *et seq*., as well as the Consumers Legal Remedies Act; and

g.    Whether Plaintiff and the Class have been injured by the wrongs complained of herein, and whether Plaintiff and the Class are entitled to monetary, injunctive and/or other equitable relief, including damages, restitution, disgorgement or other applicable remedies as applicable to the particular cause of action, and if so, the nature and amount of such relief.

38.    Based on the allegations set forth above, Plaintiff's claims are typical of the Class members' claims. Defendants' common course of conduct caused Plaintiff and Class members similar harm. Likewise, Plaintiff and other Class members can prove the same common nucleus of operative facts in order to establish Defendants' liability for the same claims.

39.    Plaintiff is an adequate Class representative because he is a member of the proposed Class and his interests do not irreconcilably conflict with other Class members' interests. Plaintiff retained counsel competent and experienced in consumer protection class actions, and Plaintiff and counsel intend to prosecute this action vigorously for the Class's benefit. Plaintiff and counsel will fairly and adequately protect the Class members' interests.

40.    Defendants have acted or refused to act, with respect to some or all issues presented in this Complaint, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

41.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation and would provide substantial benefits to members of the Class because individual litigation of each Class member's claim is impracticable. Even if each Class member could afford to bring individual actions, the court system could not as it would be unduly burdensome for

thousands of individual cases to proceed. Individual litigation also presents the potential for inconsistent or contradictory judgments, the prospect of a race to the courthouse, and the risk of an inequitable allocation of recovery among those with equally meritorious claims. Individual litigation would increase the expense and delay to all parties and the courts because it requires individual resolution of common legal and factual questions. By contrast, the class action device presents far fewer management difficulties and provides the benefit of a single adjudication, economies of scale, and comprehensive supervision by a single court and thus is manageable.

## CAUSES OF ACTION

## FIRST CLAIM FOR RELIEF

**Violation of California's Consumers Legal Remedies Act,
Cal. Civil Code § 1750, *et seq.***

42.     Plaintiff, individually and on behalf of the Class, incorporate by reference all of the allegations contained in the preceding paragraphs of this Complaint.

43.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against all Defendants.

44.     California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1770(a)(5), prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."

45.     Cal. Civ. Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

46.   Cal. Civ. Code § 1770(a)(14) prohibits "[r]epresenting that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law."

47.   Cal. Civ. Code § 1770(a)(16) prohibits "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not."

48.   Defendants violated at least these provisions of the CLRA based on the misrepresentations and omissions of material fact set forth above.

49.   Plaintiff and the Class suffered damage as a result of the acts and omissions of Defendants.

50.   CLRA notice letters are being served that comply with California Civil Code § 1782(a). If Defendants fail to provide notice to all affected consumers of the relief required under the CLRA of a full repair, replacement or other remedy, as requested in these demand letters and required under the CLRA, Plaintiff will seek actual, statutory and exemplary damages.  He does not do so at this time.

51.   Plaintiff seeks injunctive relief, costs, attorneys' fees, and all other relief that may be requested for Defendants' violation of the CLRA.

## SECOND CLAIM FOR RELIEF

### Violation of Cal. Bus. & Prof. Code § 17200, *et seq.* – "Unfair" Business Practices

52.   Plaintiff, individually and on behalf of the Class, incorporate by reference all of the allegations contained in paragraphs 1 through 51 of this Complaint.

53.   Plaintiff has standing to pursue this claim as Plaintiff have suffered injury in fact and lost money or property as a result of Defendants' actions, as set forth above. Defendants' actions as alleged in this Complaint constitute "unfair"

business practices within the meaning of California Business and Professions Code § 17200, *et seq.*

54. Defendants' business practices, as alleged herein, are "unfair" because they offend established public policy and/or are immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to their customers. Additionally, Defendants' conduct is "unfair" because Defendants' conduct violated legislatively declared policies not to engage in misleading and deceptive conduct, or to not sell defective products. Defendants also concealed material facts from consumers.

55. As a result of Defendants' "unfair" business practices, Plaintiff and members of the Class spent money on computers containing CPUs that contained the Defect.

56. Defendants' unfair business practices alleged herein constitute a continuing course of unfair competition.

57. Plaintiff and the Class seek an order for injunctive relief to benefit the public, including a corrective advertising campaign, requiring Defendants to make full disgorgement and restitution of all monies wrongfully obtained from Plaintiff and the Class, and all other relief permitted under Bus. & Prof. Code § 17200, *et seq.*

## THIRD CLAIM FOR RELIEF

### Violation of Cal. Bus. & Prof. Code § 17200, *et seq.* – "Deceptive" Business Practices

58. Plaintiff, individually and on behalf of the Class, incorporate by reference all of the allegations contained in paragraphs 1 through 57 of this Complaint.

59.     Plaintiff has standing to pursue this claim as Plaintiff suffered injury in fact and lost money or property as a result of Defendants' actions as set forth above.

60.     Defendants' actions as alleged in this Complaint constitute "deceptive" business practices within the meaning of California Business and Professions Code § 17200, *et seq*. Plaintiffs do not allege a claim of common law fraud nor any claim in this Cause of Action that requires proof of intent.

61.     Defendants' business practices, as alleged herein, are "deceptive" because they were and are likely to deceive consumers, including Plaintiff and members of the Class, targeted by such omissions of material fact.

62.     Defendants failed to disclose material information to purchasers of computers containing the CPUs by concealing the material fact that these CPUs contain the Defect.

63.     As a result of Defendants' "deceptive" conduct, Plaintiff and members of the Class spent money on computers with CPUs that contain the Defect.

64.     Defendants' deceptive business practices alleged herein constituted a continuing course of unfair competition.

65.     Plaintiff and the Class seek an order for injunctive relief to benefit the public, including a corrective advertising campaign, requiring Defendants to make full disgorgement and restitution of all monies that have been wrongfully obtained from Plaintiffs and the Class, and all other relief permitted under Bus. & Prof. Code § 17200, *et seq*.

1

## FOURTHCLAIM FOR RELIEF

2

### Violation of Cal. Bus. & Prof. Code § 17200, *et seq.* – "Unlawful" Business Practices

3

4      66.    Plaintiff, individually and on behalf of the Class, incorporate by

5   reference all of the allegations contained in paragraphs 1 through 65 of this

6   Complaint.

7      67.    Plaintiff has standing to pursue this claim as Plaintiff suffered injury

8   in fact and have lost money or property as a result of Defendants' actions, as set

9   forth above.

10      68.    Defendants' actions as alleged in this Complaint constitute

11   "unlawful" business practices within the meaning of Business and Professions

12   Code § 17200, *et seq.*, because they violated California Civil Code § 1750, *et seq.*,

13   California Civil Code § 1790, *et seq.*, 15 U.S.C. § 2301, *et seq.*, among other laws,

14   breached applicable warranties, as set forth in detail herein, and engaged in acts

15   resulting in negligence and strict liability.

16      69.    As a result of Defendants' "unlawful" business practices, Plaintiff

17   and members of the Class spent money on computers with CPUs that contain the

18   Defect.

19      70.    Defendants' business practices alleged herein constituted a

20   continuing course of unfair competition.

21      71.    Plaintiff and the Class seek an order for public injunctive relief to

22   benefit the public, including a corrective advertising campaign, requiring

23   Defendants to make full disgorgement and restitution of all monies wrongfully

24   obtained from Plaintiffs and the Class, and all other relief permitted under Bus. &

25   Prof. Code § 17200, *et seq.*

26

27

28

# FIFTH CLAIM FOR RELIEF

## Breach of Implied Warranties of Merchantability and Fitness For Particular Purpose

72.    Plaintiff, individually and on behalf of the Class, incorporate by reference all of the allegations contained in paragraphs 1 through 71 of this Complaint.

73.    Defendants, as the designer, manufacturer, marketer, distributor, and/or seller of the CPUs provided implied warranties of merchantability and fitness for a particular purpose.

74.    Defendants breached the implied warranty of merchantability, which by law (including, *inter alia*, Cal. Comm. Code § 2314) is provided for the exclusive benefit of consumers in connection with agreements for the sale of computers containing the CPUs because: (a) the CPUs could not pass without objection in the trade under the contract description in that they are missing a key promoted characteristic of the CPUs, i.e., not expose users to security breaches or create a degradation in performance when the Defect is fixed; (b) the CPUs were not of fair average quality within the product description in terms of containing the Defect; (c) were not adequately advertised, packaged, and/or labeled as omitting material facts as to the presence of the Defect; or (d) they did not conform to the promises or affirmations of fact made by Defendants. Plaintiff and Class members did not receive goods as impliedly warranted by Defendants to be "merchantable", as these CPUs are missing a key characteristic that affected their core functionality. In addition, as this was a latent defect that existed at time of purchase for the reasons described above, the CPUs are rendered unmerchantable. This warranty of merchantability was thus also breached by the existence of an unseen defect in computers containing these CPUs at the time of sale, rather than upon its subsequent discovery in January 2018. Such breach could not reasonably

have been determined at time of sale.

75.     Defendants also breached the implied warranty of fitness for a particular purpose as provided by law, including, *inter alia,* Cal. Comm. Code § 2316. Plaintiff and Class members purchased their computers for a particular purpose Plaintiff and Class members could be reasonably expected to rely upon Defendants' skill and judgment in properly providing the CPUs without containing the Defect and furnish goods suitable for their particular purpose, and thus would have no reason to believe otherwise. As Plaintiff and other Class members would have no way to know based on the design of the internal circuitry of the CPUs laptops whether these CPUs would in fact be contain the Defect, Defendants had reason to know that these buyers were relying on the skill and judgment of Defendants to furnish suitable goods that would satisfy their particular purpose. Defendants had reason to know of the particular purpose of these purchases, and that purchasers would be relying on their skill and judgment to ensure these computers would perform adequately and not subject them to security breaches or degraded performance if and when the Defect is fixed.

76.     The CPUs were not altered by Plaintiff or Class members.

77.     The CPUs did not conform to these implied warranties when they left the exclusive control of Defendants.

78.     Defendants either were or should have been aware that the CPUs would be purchased and used by Plaintiff and Class members without additional testing. In addition, Defendants either were or should have been aware that these CPUs contained the Defect.

79.     Plaintiff and Class members did not receive these goods as impliedly warranted.

80.     All conditions precedent to seeking liability for breach of these implied warranties have been performed by or on behalf of Plaintiff and Class

members in terms of paying for the goods at issue and Defendants having been placed on reasonable notice of these breaches within a reasonable time after such breaches were discovered, and having been given an opportunity to cure these breaches as to Plaintiff and all Class members and provide compensation prior to asserting this claim in this action.  Defendants have failed to repair or replace the CPUs, voluntarily offer to take sufficient remedial measures, or otherwise provide appropriate and complete relief at no cost to Plaintiff and Class members.

81.    As a direct and proximate cause of Defendants' breaches of implied warranties, Plaintiff and Class members have been injured and harmed, in an amount to be determined at trial.

### SIXTH CLAIM FOR RELIEF

**Violation of Song-Beverly Warranty Act, California Civil Code § 1790, *et seq.***

82.    Plaintiff, individually and on behalf of the Class, incorporate by reference all of the allegations contained in paragraphs 1 through 65 and 73 through 81 of this Complaint.

83.    Under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, *et seq.*, every sale of consumer goods in this State is accompanied by both a manufacturer's and retail seller's implied warranty that the goods are merchantable, as defined in that Act. In addition, every sale of consumer goods in this State is accompanied by both a manufacturer's and retail seller's implied warranty of fitness when the manufacturer or retailer has reason to know that the goods as represented have a particular purpose and that the buyer is relying on the manufacturer's or retailer's skill or judgment to furnish suitable goods consistent with that represented purpose.

84.   Plaintiff and the Class members who purchased one or more computers containing the CPUs, which are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a), in this State are "retail buyers" within the meaning of Cal. Civ. Code § 1791.

85.   Defendants are in the business of manufacturing, assembling, producing and/or selling the CPUs to retail buyers, and therefore are a "manufacturer" and "seller" within the meaning of Cal. Civ. Code § 1791.

86.   Defendants impliedly warranted to such retail buyers that the CPUs were merchantable in that they would: (a) pass without objection in the trade or industry under the contract description, (b) conform to promises and affirmation of fact made on the packaging, container or label, and (c) were fit for the ordinary purposes for which these particular laptops are used as represented by Defendants. In order for a consumer good to be "merchantable" under the Act, it must satisfy all of these three elements. In addition, Defendants impliedly warranted that these CPUs would be fit for their particular purpose.

87.   Defendants have breached both implied warranties. The CPUs they sold l were not of the same quality as those generally acceptable in the trade, contained design and/or manufacturing defects, did not comply with affirmations on the labeling or packaging of the products, and were not fit for the particular purposes for which such goods are sold. The existence of this breach was discovered based on the disclosures set forth above in January 2018... This defect was latent in the product and undiscoverable at time of sale.  Thus, any applicable statutes or time periods did not begin to run until such disclosures.

88.   Defendants have been unwilling or unable to repair or replace these CPUs with non-defective CPUs, , making it futile for Plaintiff to make such requests since, according to Defendants as set forth above, no reasonable number

of repair attempts would permit Defendants the ability to conform the CPUs to the applicable warranties. Plaintiff thus complied with all provisions of the Act

89.    As a result of Defendants' breach of the applicable implied warranties as set forth above, Plaintiff and all Class members that can assert this claim have been damaged by Defendants' failure to comply with their obligations under the Act, entitling them to recovery of direct, proximate, incidental and consequential damages, the right of refund, repair and/or replacement at no additional cost as provided under the Act as necessary to make the goods conform to Defendants' representations and promises, attorneys' fees and costs, interest on all such sums, and all other legal and equitable relief as may be appropriate under the Act.

## SEVENTH CLAIM FOR RELIEF

### Violation of The Magnuson-Moss Warranty Act
### 15 U.S.C. §§ 2301, *et seq.*

90.    Plaintiff, individually and on behalf of the Class, incorporate by reference all of the allegations contained in paragraphs 1 through 65 and 73 through 89 of this Complaint.

91.    The CPUs are a "consumer product" as defined in 15 U.S.C. § 2301(1).

92.    Plaintiff and Class members are "consumers" as defined in 15 U.S.C. § 2301(3).

93.    Defendants are "suppliers" and "warrantors" as defined in 15 U.S.C. § 2301(4) and (5).

94.    Defendants violated the Magnuson-Moss Warranty Act by breaching the applicable implied warranties of merchantability and fitness for particular purpose, as set forth in detail above.

95.    Plaintiff and Class members were injured as a direct and proximate result of Defendants' breach of these express and implied warranties because the CPUs they received did not conform with what they reasonably expected, and they did not receive the benefit of their promised bargain due to the existence of the Defect in the CPUs.

96.    By reason of Defendants' breaches of warranty, Defendants violated the statutory rights of Plaintiff and the Class members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, Plaintiff and Class members are entitled to the relief provided under that statute, including recovery of direct, proximate, incidental and consequential damages, the right of refund, repair and/or replacement at no additional cost to make these goods confirm to Defendants' representations and promises, attorneys' fees and costs, interest on all such sums, and all other legal and equitable relief as may be appropriate under the Magnuson-Moss Warranty Act.

## EIGHTH CLAIM FOR RELIEF

Common Counts – Assumpsit, Restitution, Unjust Enrichment
And/or Quasi-Contract

97.    Plaintiff, individually and on behalf of the Class, incorporate by reference all of the allegations contained in paragraphs 1 through 41 of this Complaint.

98.    This cause of action is alleged as an alternative to the claims for relief set forth in this Complaint based on breach of warranties, as permitted under Fed. R. Civ. Proc. 8(d)(2).

99.    Plaintiff and the Class members plead just grounds for recovering money paid for benefits Defendants received from them, and have a right to restitution at law through an action derived from the common-law writ of

assumpsit, by implying a contract at law based on principles of restitution and unjust enrichment, or through quasi-contract.

100.   Defendants, having been unjustly conferred a benefit by Plaintiff and Class members through acts of mistake, fraud or request as set forth above, and having received such benefits by selling defective products and omitting material facts as set forth in detail above, are required to make restitution.   The circumstances here are such that, as between the two, it is unjust for Defendants to retain such a benefit based on the conduct described above. Nothing in this cause of action requires a showing such laptops are valueless; rather, the measure of appropriate restitutionary damages is the amount paid by Plaintiff and Class members as they did not get the exchange that they expected.  The return of that benefit is the remedy typically sought for this cause of action, as such money or property belongs in good conscience to Plaintiff and Class members, and can be traced to funds or property in Defendants' possession. Plaintiff and Class members have unjustly enriched Defendants through payments and the resulting profits enjoyed by Defendants as a result of payments for the CPUs in question. Their detriment and Defendants' enrichment were related to and flowed from the conduct challenged in this Complaint.

101.   By virtue of the purchase and sale of computers containing these CPUs, Defendants alternatively entered into a series of implied-at-law or quasi-contracts that resulted in a sum certain being had and received by Defendants, either directly or indirectly, at the expense of Plaintiff and Class members under agreements in assumpsit. Plaintiff and Class members conferred a benefit upon Defendants by purchasing computers containing these CPUs. As set forth above, Plaintiff Jones paid the sum certain of $3,047.91, for his computer to authorized retailers of Defendants or sellers of computers that contained the CPUs. In question for which Defendants received direct compensation. Defendants had

knowledge of the general receipt of such benefits, which Defendants received, accepted, and retained. Defendants owe Plaintiffs and Class members specific sums that can be obtained either directly from Class members, Defendants or their authorized retailers.

102.   Under principles of restitution recognized under California law, an entity that has been unjustly enriched at the expense of another by the retention of a benefit wrongfully obtained is required to make restitution to the other. In addition, under common law principles recognized in claims of common counts, assumpsit, unjust enrichment, restitution, and/or quasi-contract, under the circumstances alleged herein it would be inequitable for Defendants to retain such benefits without paying restitution or restitutionary damages. Such principles require Defendants to return such benefits when the retention of such benefits would unjustly enrich Defendants. They should not be permitted to retain the benefits conferred by Plaintiff and Class members via payments for these laptops. Other remedies and claims may not permit them to obtain such relief, otherwise leaving them without an adequate remedy at law.

103.   Plaintiff and Class members seek appropriate monetary relief for sums certain as is permitted by law for such claims. In addition, pursuant to California Civil Code § 2224, "[o]ne who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it." Based on the facts and circumstances alleged above, in order to prevent unjust enrichment and to prevent Defendants from taking advantage of their own wrongdoing, Plaintiff and Class members are further entitled to the establishment of a constructive trust, in a sum certain, of all monies charged and collected or

retained by Defendants for the products at issue from which Plaintiff and Class members may seek restitution.

## NINTH CLAIM FOR RELIEF

### Strict Liability

104.   Plaintiff, individually and on behalf of the Class, incorporate by reference all of the allegations contained in paragraphs 1 through 42 of this Complaint.

105.   Plaintiff and the Class were harmed by CPUs Defendants manufactured, which were contained in, but also separate and apart from, the computers they purchased.

106.   Defendant's CPUs contained a manufacturing defect, or were defectively designed for the reasons set forth above.

107.   Plaintiff and Class members have been harmed, as they now own a computer with a CPU that due to such manufacturing or design defect is subject to invasion of a supposedly core protected part of the CPU and decreased performance, in an amount according to proof at trial.

## TENTH CLAIM FOR RELIEF

### Negligence

108.   Plaintiff, individually and on behalf of the Class, incorporate by reference all of the allegations contained in paragraphs 1 through 41 of this Complaint.

109.   Defendants were negligent in the manufacture and design of the CPUs containing the Defect, which CPUs were contained in, but also separate and apart from, the computers Plaintiff and Class members purchased.

110.   Defendant's negligence was a substantial factor and reasonably foreseeable in causing harm to Plaintiff and Class members.

111.   Plaintiff and Class members have been harmed, as they now own a computer with a CPU that due to such manufacturing or design defect is subject to invasion of a supposedly core protected part of the CPU and decreased performance, in an amount according to proof at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, requests that the Court order the following relief and enter judgment against Defendants as follows as applicable for the particular cause of action:

1.   An Order certifying the proposed Class and appointing Plaintiff and counsel to represent the Class;

2.   An Order awarding declaratory and/or public injunctive relief as permitted by law or equity, including enjoining Defendants from continuing the practices as set forth herein;

3.   An order that Defendants engage in a corrective advertising campaign and imposing a constructive trust;

4.   A judgment awarding Plaintiff and the Class refunds, restitution and/or restitutionary disgorgement in an amount according to proof;

5.   A judgment awarding Plaintiff and the Class actual, compensatory, general, special, statutory and/or exemplary damages if available under that cause of action as presently plead;

6.   An order awarding attorneys' fees and costs incurred in prosecuting this action pursuant to, *inter alia,* Cal. Code of Civ. Proc. § 1021.5; Cal. Civ. Code § 1750, *et seq.*; Cal. Civ. Code § 1790, *et seq.*; 15 U.S.C. § 2301, *et seq.*,

and the private Attorney General, common fund and substantial or public benefit theories of recovery;

   7.       An order awarding pre-judgment and post-judgment interest; and

   8.       All other relief that the Court deems necessary, just and proper.

### **JURY TRIAL DEMAND**

Plaintiff demands a trial of this action by a jury on all claims so triable.

DATED:  January 5, 2017                    WESTERMAN LAW CORP.

                                            By:    s/Jeff S. Westerman

                                            Jeff S. Westerman (SBN 94559)
                                            jwesterman@jswlegal.com
                                            Kenneth A. Remson (SBN 153850)
                                            kremson@jswlegal.com
                                            1875 Century Park East, Suite 2200
                                            Los Angeles, CA 90067
                                            Tel: (310) 698-7880
                                            Fax: (310) 698-7452

                                            CONSUMER LAW GROUP OF
                                            CALIFORNIA

                                            By:    s/Alan M. Mansfield

                                            Alan M. Mansfield (SBN 125998)
                                            alan@clgca.com
                                            16870 W. Bernardo Dr., Suite
                                            San Diego, CA  92127
                                            Tel: (619) 308-5034
                                            Fax: (855) 274-1888

                                            *Attorneys for Plaintiff*